## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SPECIALTYCARE INC., REMOTE
NEUROMONITORING PHYSICIANS,
PC, and SENTIENT PHYSICIANS, PC,

    Plaintiffs,

vs.

OSCAR INSURANCE COMPANY OF
FLORIDA

    Defendant.
_____/

JURY TRIAL DEMANDED

Case No.

## COMPLAINT

Plaintiffs, SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, AND SENTIENT PHYSICIANS, PC (collectively, "**SpecialtyCare**") bring this action against Defendant, OSCAR INSURANCE COMPANY OF FLORIDA ("**Oscar Insurance**"), and allege as follows:

### INTRODUCTION

1. Defendant, Oscar Insurance, is violating the No Surprises Act ("**NSA**") and engaging in bad faith claims settlement practices. Oscar Insurance has devised a scheme to turn the purpose of the NSA on its head. Rather than Independent Dispute Resolution ("**IDR**") proceedings being a quick, efficient way to resolve payment disputes between out-of-network providers of emergency services and health plans, Oscar Insurance has used the NSA to deny, delay, and underpay out-

of-network providers. After providers receive low initial payments from Oscar Insurance (or no payment at all), providers must navigate the NSA to receive a determination for fair compensation of their services. Once a provider receives an IDR determination, Oscar Insurance delays payment far beyond the statutorily mandated 30-day deadline.

2. To date, and after write offs, Oscar Insurance has not paid $805,221.00 in past-due IDR awards issued through November 7, 2025, to SpecialtyCare. Through this action SpecialtyCare also seeks recovery of an additional $ 123,765.00 in IDR awards entered against Oscar Insurance and issued after November 7, 2025 and through November 25, 2025, that, given Oscar Insurance's repeated failure to comply with the NSA's 30-day payment deadline, are expected to remain unpaid. Thus, in total, SpecialtyCare seeks recovery of $928,986.00 through this action. Oscar Insurance is ignoring federal law and violating Florida state law and must be held accountable.

## PARTIES, JURISDICTION, AND VENUE

3. SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare, Inc. through its affiliates and subsidiaries, is a leading national health care provider of intraoperative neuromonitoring throughout the United States. SpecialtyCare, Inc. has two affiliated entities: Plaintiffs Remote Neuromonitoring

Physicians, PC and Sentient Physicians, PC. Remote Neuromonitoring Physicians, PC is organized under the laws of the state of Pennsylvania and Sentient Physicians, PC, is organized under the laws of the state of Illinois. Both are professional corporations with principal places of business located in Brentwood, Tennessee.

4. Oscar Insurance is a for-profit corporation organized under the laws of the state of Florida with its principal place of business in New York, New York. Oscar Insurance insures and administers health insurance products and benefits plans throughout Florida.

5. This Court has complete diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as all Plaintiffs are diverse from Oscar Insurance and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Oscar Insurance because, among other reasons, Oscar Insurance operates, conducts, engages in, and carries on a business in Florida and in this District; and committed the acts complained of herein in this District. Further, Oscar Insurance is engaged in substantial and not isolated activity in Florida, both interstate and intrastate.

7. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District. Specifically, a significant number of the medical

services underlying the IDR determinations at issue were performed for Oscar Insurance's members in the Southern District of Florida.

## FACTUAL ALLEGATIONS

8. This dispute arises from Oscar Insurance's failure to reimburse SpecialtyCare for its health care services provided to Oscar Insurance's members.

9. At all material times, Oscar Insurance was obligated to cover and reimburse SpecialtyCare for certain out-of-network ("**OON**") items and services rendered to Oscar Insurance's members and insureds under the Federal No Surprises Act ("**NSA**") and applicable Florida law.

10. The NSA became effective January 1, 2022, and requires health plans and insurers, like Oscar Insurance, to provide coverage and reimburse providers directly for OON emergency health care services and non-emergency services furnished by OON providers at participating hospitals and facilities.

11. Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. 42 U.S.C. §§300gg-111(b)(1)(C-D). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. *Id.* § 300gg-111(c)(1)(A). If negotiations fail, the provider may initiate an independent dispute resolution ("IDR") process where a third-party arbitrator,

4

known as an IDR entity, determines the pricing on the claim(s). *Id.* § 300gg-111(c)(1)(B).

12.  The IDR process requires both parties to submit position statements and proposed offers of payment for the items and services at issue to the IDR entity. *Id.* §(c)(5)(B)(i). The IDR entity then evaluates both proposed offers based on a number of statutory factors, then selects one offer as the appropriate payment for the items and services at issue. *Id.* § 300gg-111(c)(5)(C).

13.  After the IDR entity's determination, the health plan or insurer is required to pay any amount owed **within thirty (30) calendar days**. Id. § 300gg-111(c)(6).

14.  Since the implementation of the NSA, SpecialtyCare and Oscar Insurance have engaged in numerous IDR processes to resolve OON payment disputes. In most, if not all of those IDR proceedings, Oscar Insurance participated and responded in writing to SpecialtyCare's claims and demands. Likewise, numerous IDR entities have issued determinations clearly requiring Oscar Insurance to pay SpecialtyCare additional amounts pursuant to the NSA.

15.  The IDR awards at issue were rendered in accordance with the NSA, and are, therefore, binding upon SpecialtyCare and Oscar Insurance. *Id.* § 300gg-111(c)(5).

16. However, Oscar Insurance has consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $805,221.00 in unpaid and past-due IDR awards issued through November 7, 2025, that are owed to SpecialtyCare from Oscar Insurance. In addition, SpecialtyCare seeks recovery of $123,765.00 in IDR awards issued after November 7, 2025 and through November 25, 2025 that, given Oscar Insurance's repeated failure to comply with the NSA's 30-day payment deadline, SpecialtyCare expects will not be paid in compliance with the NSA's 30-day payment deadline. Together, these amounts total $928,986.00 in unpaid IDR awards issued through November 25, 2025, which SpecialtyCare seeks to recover through this action. ("**Debt**"). A chart identifying each of the unpaid IDR awards at issue in this action, including the dispute numbers for each IDR award against Oscar Insurance and the amount Oscar Insurance owes under each award, is attached hereto as **Exhibit "A."**

17. Additionally, Oscar Insurance has consistently failed to make timely payment within the NSA's required 30-calendar-day payment window, beginning when the IDR entity issued an award in favor of SpecialtyCare.

18. SpecialtyCare has made numerous demands to Oscar Insurance for its payment on the Debt.

19. Beginning in 2023 and continuing thereafter, SpecialtyCare escalated the issue of Oscar Insurance's routine failure to pay amounts owed for the IDR entity

6

determinations to Oscar Insurance. Although not required by the NSA, SpecialtyCare provided an inventory of IDR entity determinations to Oscar Insurance to aid in the resolution of the Debt. Such inventory listed the following identifying information:

- IDR dispute number
- Current Procedural Terminology
- Service Date
- Processor Control Number
- Payor Claim Number
- Award Total
- Decision Date
- Expected Payment Date
- Total Payments (to date)
- Still Owed
- Patient Amount Paid

20. SpecialtyCare diligently followed up with Oscar Insurance through multiple emails, Oscar Insurance's online provider portal, and Oscar Insurance's customer service hotlines, among other avenues. However, Oscar Insurance frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the Debt.

21. SpecialtyCare engaged and continues to engage in a series of transactions in an open account with Oscar Insurance.

22. SpecialtyCare provided and continues to provide OON items and services to Oscar Insurance's members and insureds and, when necessary to protect its rights, sought reimbursement pursuant to the NSA. Accordingly, SpecialtyCare

also expects to enter further transactions with Oscar Insurance that may yield future IDR entity determinations and increase the Debt.

23. For each IDR determination at issue, Oscar Insurance made no payment at all or an initial payment on the claim that was unreasonable and well below the amount ultimately awarded in the IDR award.

24. Oscar Insurance makes low initial payments hoping that SpecialtyCare will be too busy to file IDR proceedings or will miss one of the NSA's strict deadlines. This forces SpecialtyCare to go through the IDR process, which is burdensome, on every claim.

25. When SpecialtyCare challenges Oscar Insurance's low payments and receives IDR awards for higher amounts, Oscar Insurance then unreasonably delays payment past the statutory payment deadline of thirty days.

26. Oscar Insurance knows that it is statutorily required to pay IDR awards within thirty days. However, it does not invest in the compliance systems and personnel needed to meet their obligations under federal law because it knows that Oscar Insurance, its shareholders, and the health plans it serves profit from lack of compliance and violation of the mandatory payment obligations. Oscar Insurance knows that the longer it delays or denies payment, the more they earn from the interest and/or investment income generated for their fully insured business. By delaying payment or not paying IDR awards, Oscar Insurance is able to keep the

health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans.

27. Despite SpecialtyCare's numerous demands, Oscar Insurance has failed to satisfy the Debt. As a result, Oscar Insurance has forced SpecialtyCare to file this action to obtain the payments owed for services provided by SpecialtyCare. *See* Exhibit A.

## COUNT I – ACTION FOR CONFIRMATION OF IDR AWARDS (9 U.S.C. § 9)

28. SpecialtyCare incorporates and realleges paragraphs 1 – 27 as though fully alleged and set forth herein.

29. The NSA states that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "***shall be made*** directly to the nonparticipating provider ***not later than 30 days after*** the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E), 111(c)(6) (emphasis added). More than thirty days have passed for IDR awards totaling $805,221.00. An additional $123,765.00 in IDR awards will have reached the 30-day payment deadline by the time Oscar Insurance's response to this Complaint is due or shortly thereafter. Given Oscar Insurance's repeated pattern of nonpayment, SpecialtyCare anticipates that this additional $123,765.00 will not be paid by the 30-day deadline. Oscar Insurance has not challenged any of these IDR awards. Oscar Insurance simply has not paid them.

30. Pursuant to Section 9 of the Federal Arbitration Act ("**FAA**"), a party to an arbitration may commence a summary action in court for confirmation of the award, and a "court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9.

31. In keeping with the strong federal policy favoring arbitration, confirmation proceedings under the FAA are generally summary in nature. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary[.]").

32. As previously noted, IDR awards issued under the NSA are final and binding upon the parties and, hence, subject to enforcement by the Court under Section 9 of the FAA.

33. SpecialtyCare is entitled to an order confirming the IDR awards issued through November 25, 2025.[1]

34. Accordingly, SpecialtyCare brings this action for an Order confirming each of the unpaid IDR awards set forth in Exhibit A.

35. The amounts owed on unpaid IDR awards issued through November 25, 2025, total $928,986.00, plus pre-judgment and post-judgment interest.

---

[1] The IDR awards through November 25, 2025, and the amounts due and owing pursuant to said awards are not in dispute. Oscar Insurance previously acknowledged that it is the party responsible for the IDR determinations at issue in this action. Oscar Insurance has copies of all IDR awards for which SpecialtyCare seeks confirmation. Furthermore, Exhibit A contains coding information and dates of decisions for Oscar Insurance to confirm the amounts of the awards listed therein. As such, SpecialtyCare has not attached each IDR award for which it seeks confirmation to this Complaint.

## COUNT II – OSCAR INSURANCE'S VIOLATION OF
## NO SURPRISES ACT

35. SpecialtyCare incorporates and realleges the paragraphs 1 – 27 as though fully alleged and set forth herein.

36. The NSA states that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "**shall be made** directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E), 111(c)(6) (emphasis added). More than thirty days have passed for IDR determinations totaling $$805,221.00. An additional $123,765.00 in IDR awards will have reached the 30-day payment deadline by the time Oscar Insurance's response to this Complaint is due or shortly thereafter. Given Oscar Insurance's repeated pattern of nonpayment, SpecialtyCare anticipates that this additional $123,765.00 will not be paid by the 30-day deadline.  Oscar Insurance has not challenged any of these IDR awards. Oscar Insurance simply has not paid them.

36. Oscar Insurance has routinely failed to pay IDR awards issued through November 25, 2025, to SpecialtyCare within the statutorily mandated 30-day deadline.

37. As a result of Oscar Insurance's violation of and disregard of the NSA's requirements, SpecialtyCare has been directly and proximately damaged by Oscar

Insurance's failure to remit payment in full in an amount in excess of $75,000, plus prejudgment and post-judgment interest.

## COUNT III - ACCOUNT STATED

37. SpecialtyCare incorporates and realleges paragraphs 1 – 27 as though fully alleged and set forth herein.

38. There is presently due and owing to SpecialtyCare from Oscar Insurance the sum of $928,986.00 on an account stated between the parties, which amount represents the total principal amount owed by Oscar Insurance on past-due and unpaid IDR awards issued through November 25, 2025.

39. SpecialtyCare has made frequent demands to Oscar Insurance for the above-described amounts due and owing and regularly provided to Oscar Insurance a statement of Oscar Insurance's balance owed to SpecialtyCare in the form attached as Exhibit A.

40. Oscar Insurance did not object to the validity of the IDR entity determinations underlying the $928,986.00 owed.

41. SpecialtyCare has been directly and proximately damaged by Oscar Insurance's failure to remit payment in full on the account stated between the parties and is entitled to recover money damages plus prejudgment and post-judgment interest, in an amount to be determined at trial, but in no event less than $928,986.00.

## COUNT IV - OPEN ACCOUNT

42.     SpecialtyCare incorporates and realleges paragraphs 1 – 27 as though fully alleged and set forth herein.

43.     SpecialtyCare provided services to Oscar Insurance's members, and, as a result of the provided services, a debt was generated.

44.     The debt remains unresolved, and, at present, Oscar Insurance owes SpecialtyCare the amount of $928,986.00 that is due with applicable interest. The $928,986.00 amount represents the total principal amount owed by Oscar Insurance on past-due and unpaid IDR awards issued through November 25, 2025.

45.     A copy of the account, in the form of an itemized chart listing the dispute numbers and amount owed for each IDR award against Oscar Insurance, including the total amount that remains unpaid, is attached hereto as Exhibit A.

## COUNT V – VIOLATION OF FLA. STAT. § 627.64194

46.     SpecialtyCare incorporates and realleges paragraphs 1 – 27 as though fully alleged and set forth herein.

47.     At all relevant times, SpecialtyCare was a "non-participating provider" with Oscar Insurance within the meaning of Fla. Stat. § 627.64194, and Oscar Insurance is liable for payment of services rendered to Oscar Insurance's members.

48.     Fla. Stat. § 627.64194(4) requires that all insurers, including Oscar Insurance, reimburse non-participating providers, such as SpecialtyCare, for both

emergency and non-emergency services rendered to the insurer's members according to the methodology set forth in Fla. Stat. § 641.513(5).

49. SpecialtyCare meets the requirements of Fla. Stat. § 627.641(2)-(3) and, thus, Oscar Insurance was obligated to pay for the services provided by SpecialtyCare to Oscar Insurance's insureds.

50. Pursuant to Fla. Stat. § 641.513(5) non-participating providers are entitled to reimbursement for services rendered in an amount equal to the lesser of the provider's charges, the "usual and customary provider charges for similar services in the community where the services were provided," or "[t]he charge mutually agreed to by the [insurer] and the provider within 60 days of the submittal of the claim."

51. Fla. Stat. § 627.64194(6) provides nonparticipating providers with a right of action in the event an insurer fails to make payment pursuant to Fla. Stat. § 627.64914(4) and § 641.513(5).

52. SpecialtyCare did not reach an agreement with Oscar Insurance regarding any charges within sixty days of the submittal of the claims at issue in this action. Therefore, SpecialtyCare is entitled to reimbursement from Oscar Insurance at the lesser of its charges or, if different, the "usual and customary provider charges for similar services in the community where the services were provided." *See* Fla. Stat. § 641.513(5).

53. For the claims at issue, SpecialtyCare submitted its charges to Oscar Insurance. In response, Oscar Insurance either made no payment at all or an initial payment on the claim that was unreasonable and well below the amounts it was obligated to pay pursuant to Fla. Stat. § 641.513(5).

54. As a result, SpecialtyCare initiated and prevailed in the IDR process provided by the NSA for each of the IDR determinations at issue.

55. The IDR determinations reflect the amount of SpecialtyCare's charges for services rendered to Oscar Insurance's members as well as the usual and customary charges for similar services in the community.

56. Furthermore, Oscar Insurance failed to remit payment for the claims at issue within the timeframes required by Fla. Stat. § 627.6131.

57. Accordingly, Oscar Insurance is obligated under Fla. Stat. § 627.64914(4) and § 641.513(5) to pay the full amount of each award, and its failure to do so entitles SpecialtyCare to damages in the amount of the unpaid IDR determinations.

58. SpecialtyCare is entitled to recover damages in the amount of the unpaid IDR determinations as set forth in Exhibit A, plus prejudgment and post-judgment interest under Florida law.

**PRAYER FOR RELIEF**

WHEREFORE, SpecialtyCare respectfully prays for the following relief:

A. A judgment confirming each IDR award included in Exhibit A pursuant to 9 U.S.C. § 9;

B. A judgment in an amount not less than $928,986.00 plus pre- and post-judgment interest under 28 U.S.C. § 1961; and

C. Any and all additional legal or equitable relief to which SpecialtyCare may be entitled.

## JURY TRIAL DEMAND

SpecialtyCare demands a trial by jury for all issues so triable as a matter of right.

Dated: December 8, 2025            Respectfully submitted,

*/s/ Robert W. Thielhelm*
Robert W. Thielhelm, Jr.
Florida Bar No. 889679
Email: rthielhelm@bakerlaw.com
mpetrovich@bakerlaw.com
orlbakerdocket@bakerlaw.com
Andrew T. Hughes
Florida Bar No. 1031858
ahughes@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Ste.2300
Orlando, Florida 32801
Telephone (407) 649-4000
Telecopier (407) 841-0168

*Attorneys for Plaintiffs*